478 So.2d 729 (1985)
William BONSTILL, Plaintiff-Appellant,
v.
GOLDSBERRY OPERATING COMPANY, Defendant-Appellee.
No. 84-806.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1985.
*731 Chris J. Roy and Thomas M. Yeager, Alexandria, for plaintiff-appellant.
Gold, Simon, Weems, Bruser, Sharp, Suls & Rundell, John F. Simon, Alexandria, Bienvenu, Foster, Ryan & O'Bannon, Ernest L. O'Bannon, New Orleans, Trimble, Percy, Smith, Wilson, Foote, Walker & Honeycutt, James T. Trimble, Jr., Alexandria, for defendant-appellee.
Steven W. Cook and Charles O. LaCroix of Gist, Methvin, Hughes & Munsterman, Alexandria, for intervenor-appellee-appellant.
Before GUIDRY, STOKER and KING, JJ.
KING, Judge.
The issue presented by this appeal is whether or not the trial court was correct in granting a summary judgment against the plaintiff and the intervenor, which barred plaintiff from recovering in tort for injuries that he sustained in the course of his employment and which barred intervenor from recovery on its subrogation claim for payment of workmen's compensation to plaintiff.
The trial court found that the plaintiff, William Bonstill (hereinafter plaintiff), was a statutory employee of the defendant, Goldsberry Operating Company, Inc. (hereinafter GOPOCO), during the time that plaintiff was injured, and that plaintiff's remedy was limited to workmen's compensation from his employer.
Both, plaintiff and the intervenor, Argonaut Insurance Company, who is the workmen's compensation insurer of plaintiff's employer, have timely appealed the trial court's granting of the summary judgment against them. We reverse and remand for further proceedings.

FACTS
At the time of his accident on March 25, 1982, the plaintiff was an employee of Ryder's Oilfield Service, Inc. (hereinafter Ryder). Ryder had been engaged by GOPOCO, the operator of the lease on which a pumping unit was situated, to grease the pumping unit and change stuffing rubbers on the pumping unit. The plaintiff was injured when a ladder on which he was descending came loose from the pumping unit, causing him to fall to the ground.
The plaintiff filed suit in tort against GOPOCO and its liability insurers, Bituminous Casualty Corporation and Tudor Insurance Company, and also against the owners of the pumping unit, Hood Goldsberry and William M. Plaster. Argonaut Insurance Company, the workmen's compensation insurer of Ryder, filed a petition *732 of intervention against all of the defendants seeking to recover workmen's compensation benefits which it had paid to plaintiff. GOPOCO and its liability insurers filed a Motion for Summary Judgment seeking dismissal of the plaintiff's suit and the intervention on the ground that GOPOCO was the statutory employer of the plaintiff at the time of his accident. Hood Goldsberry and William Plaster were not parties to the Motion for Summary Judgment, and are not involved in this appeal. From the trial court's granting of the summary judgment the plaintiff and intervenor have both devolutively appealed.

LAW
In the recent case of Richard v. Weill Construction Co., Inc., 446 So.2d 943 (La. App.3rd Cir.1984), writ den. 449 So.2d 1356 (La.1984), this court quoted the Louisiana Supreme Court from the case of Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981), as follows:
"`A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Mashburn v. Collin, 355 So.2d 879 (La.1977). To satisfy his burden the mover must meet a strict standard by a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. Adickes v. S.H. Kress & Co., supra; Sartor v. Arkansas Nat. Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944). The papers supporting mover's position are closely scrutinized, while the opposing papers are indulgently treated, in determining whether the mover has satisfied his burden. Adickes v. S.H. Kress & Co., supra; 6 Moore's Federal Practice, § 56.15[3].'" Richard v. Weill Construction Co., Inc., 446 So.2d 943, at pages 944-945 (La.App.3rd Cir.1984), writ den. 449 So.2d 1356 (La.1984).
The plaintiff and intervenor argue that there is a genuine issue of material fact as to whether the plaintiff was a statutory employee of GOPOCO at the time of the accident and that for this reason the trial court's granting of the summary judgment against them was improper.
There is no doubt that if GOPOCO was a "principal" in relation to the plaintiff at the time of the accident, then plaintiff's exclusive remedy is workmen's compensation. LSA-R.S. 23:1032. LSA-R.S. 23:1032 provides:
"For purposes of this Section, the word `principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof." (Emphasis supplied.)
In interpreting LSA-R.S. 23:1032 we have held that a principal is immune in tort, and liable in worker's compensation, anytime the principal contracts to do any work, and then contracts with another party for the performance of that work. Richard v. Weill Construction Co., Inc., supra; Barnhill v. American Well Service and Salvage, Inc., 432 So.2d 917 (La.App.3rd Cir.1983). Therefore, a critical question is whether the plaintiff was performing work which was a part of GOPOCO's "trade, business or occupation" at the time of his accident.
The Louisiana Supreme Court has recently spoken on the subject of statutory employer-employee relationships in the case of Rowe v. Northwestern National Insurance *733 Co., 471 So.2d 226 (La.1985). As Justice Lemmon stated in his concurring opinion, the Rowe case "represents a re-examination of the expansive trend taken by the courts in recent years in the so-called statutory employer cases." Supra, at 229. In Rowe, the court held that Cargill, Inc., was not the statutory employer of the plaintiff, an employee of Ace Electric Company, because the type of work performed by the plaintiff at the time of his injury, the disconnection and reconnection of electricity to a pump, was not customarily performed by Cargill employees. In fact, the court found that it was the custom of the Cargill facility to contract out this type of work to those who were properly equipped to deal with high voltage electrical wires. In accordance with Rowe, in order for GOPOCO to be considered the statutory employer of the plaintiff in the instant case, GOPOCO must show that (1) routine maintenance of the pumping unit is a part of its trade, business or occupation; and (2) greasing the pumping unit and changing stuffing rubbers on the pumping unit, which allegedly is a part of maintaining the pumping unit, was also customarily performed by its employees.
The record indicates that the plaintiff, along with two other members of the Ryder crew, were requested by Mr. Vance Gardner on behalf of GOPOCO to grease the saddle bearings and replace stuffing rubbers on the pumping unit from which the plaintiff fell. In support of their Motion for Summary Judgment, the movers submitted, among other evidence, the affidavit of Hood Goldsberry, President of GOPOCO. In his affidavit, Mr. Goldsberry stated that GOPOCO was in the business of operating producing oil wells. According to Mr. Goldsberry, keeping a pumping unit in good repair is an essential part of the business of the operation of a producing oil well. Mr. Goldsberry further stated that Vance Gardner worked for GOPOCO taking care of the operations on the lease on which was located the pumping unit from which the plaintiff fell. Included among Mr. Gardner's duties were the greasing of saddle bearings, the tightening of bolts holding saddle bearings, and the replacing of stuffing rubbers on the pumping unit. Mr. Goldsberry's affidavit was generally corroborated by the affidavit of Mr. Gardner, including Mr. Gardner's statement that he had personally performed such work on previous occasions. Answers to interrogatories show that Mr. Gardner was the only person hired by GOPOCO to work on the oil well where the plaintiff was injured.
Also included among the evidence submitted by the movers were the affidavits of Jesse J. Ross, Jr. and Harry Avant. Ross is Production Manager of Big Island Operating Company, and Avant is President of Smith Operating and Management Company. Like GOPOCO, these companies are also operators of producing oil wells. Both Ross and Avant stated in their affidavits that an essential part of the business of the operator of a producing oil well is to keep the pump in operation continuously, and that greasing saddle bearings and replacing stuffing rubbers in the pumping unit must be done on a regular basis in order to keep the pump operating properly.
The Louisiana Supreme Court dealt with the scope of LSA-R.S. 23:1032 in Lewis v. Exxon Corp., 441 So.2d 192 (La.1983). There the court said, that in deciding whether maintenance work is within the trade, business or occupation of an employer:
"General maintenance and repair work, which by their nature allow the smooth and continued operations of the principal, are within the scope of the statute. Barnes v. Sun Oil Co., supra at 764; 1C A. Larson, The Law of Workmen's Compensation § 51.23 (1982)." Lewis v. Exxon Corp., 441 So.2d 192, at page 198 (La.1983).
We agree with the trial court that there is no genuine issue as to the fact that the routine maintenance of the pumping unit from which plaintiff fell is a part of GOPOCO's trade, business, or occupation. However, this fact alone is not determinative of GOPOCO's status as a statutory *734 employer. GOPOCO must also show that such routine maintenance of the pumping unit was also customarily performed by its employees. Rowe v. Northwestern National Insurance Co., supra; Lewis v. Exxon Corp., supra; Richard v. Weill Construction Co., Inc., supra.
In support of his opposition to the Motion for Summary Judgment, the plaintiff submitted the depositions of Hood Goldsberry and David Caskey, a petroleum engineer for GOPOCO, and by reference the pleadings, interrogatories and answers to interrogatories that are contained in the record. More specifically, the plaintiff relies on certain answers given by Mr. Goldsberry in his deposition as follows:
"Q. But my question really goes to whether or not you do not have the personnel, the guys to go out and do, the roustabouts and what have you, the tool pushers, are not a part of GOPOCO at this time? You have no personnel like that working with GOPOCO, who, if you did have the equipment, would go out?
A. No, sir....
Q. Does GOPOCO furnish Mr. Gardner with the tools by which he works?
A. Specialized tools he would be furnished with. I would say yes in some cases and no in others. We may buy a guage [sic]line for him to gauge the tanks, which would be classified a tool. I assume it would reallyyou know, as far as he has wrenches he does work with. They probably belong to him personally.
Q. I take it, he has to have some type of hand tools to make the readings and do the work that he has to do on your well as well as any other oil well which he would be the pumperswitcher on?
A. Yes sir."
The plaintiff argues that GOPOCO did not have the manpower, or necessary equipment and tools to perform work similar to the type of work performed for it by Ryder, and that GOPOCO could not therefore be the statutory employer of the plaintiff. Plaintiff further argues that there exists a material question of fact as to whether or not Mr. Gardner was an employee of GOPOCO.
The principal elements to be considered in determining whether an employer-employee relationship exists are (1) selection and engagement; (2) payment of wages; (3) power of dismissal; and (4) power of control. Green v. DeFelice, 466 So.2d 1373, 1379 (La.App.3rd Cir.1985); Franklin v. Haughton Timber Co., 377 So.2d 400, 403 (La.App. 2nd Cir.1979), writ den., 380 So.2d 624 (La.1980), and cases cited therein. Regarding the fourth element, power of control, the focus should be placed on whether and to what degree the right to control the work has been contractually reserved by the principal. The supervision and control which is actually exercised by the principal is less significant. Hemphill v. State Farm Insurance Co., 472 So.2d 320, 322 (La.App.3rd Cir.1985), and cases cited therein.
In his affidavit, Mr. Goldsberry stated that GOPOCO employed numerous types of employees during the months prior to the time of plaintiff's accident, including a number of pumpers. Also, as previously mentioned, Mr. Goldsberry and Mr. Gardner stated in their affidavits that Mr. Gardner was a pumper for GOPOCO and had previously personally performed the type of work of which the plaintiff performed at the time of the accident. Nevertheless, the record contains little evidence regarding the legal relationship between GOPOCO and Mr. Gardner, and no evidence regarding the legal relationship between GOPOCO and other pumpers allegedly employed by GOPOCO.
Concerning GOPOCO's legal relationship with Mr. Gardner, Mr. Goldsberry testified in his deposition that GOPOCO paid Mr. Gardner $175.00 every month, but that there were no withholdings made from his paychecks. Mr. Goldsberry further testified in his deposition that GOPOCO furnished Mr. Gardner with a Form 1099, but not a Form W-2. In addition, Mr. Gardner *735 stated in his affidavit that his duties as a pumper were "checking how much oil is produced by the well on the lease, doing tests to see the amount of water in the oil, filling out a daily report which is mailed to the office of Goldsberry Operating Co., Inc., and doing routine maintenance and minor repairs on a pumping unit which pumps the well on the lease, and notifying David Caskey of Goldsberry Operating Co., Inc., if the machinery on the lease is in need of any kind of major repairs."
The evidence submitted by the opponents to the Motion for Summary Judgment indicates that two people were necessary to do the job of greasing and tightening the bolts on the saddle bearings, which plaintiff was doing shortly before the accident, yet Mr. Gardner was the only person hired by GOPOCO to work on this particular pumping unit. Apparently GOPOCO did not furnish Mr. Gardner with all the tools necessary to do maintenance work on this particular pumping unit as Mr. Gardner had to use some of his own personal tools. From the facts contained in the record, it is not clear whether Mr. Gardner was an employee of GOPOCO or whether he is an independent contractor and regardless of his status, whether or not he customarily performed for GOPOCO the same type of work performed by plaintiff at the time of his injury.
LSA-R.S. 23:1021(5); Acts 1975, No. 583 § 1 effective September 1, 1975, which was applicable at the time of plaintiff's injury, states that an:
"`Independent contractor' means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as a means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the worktime of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter." (Emphasis ours.)
The wording of this particular provision has remained unchanged[1] since the case of Lushute v. Diesi, 354 So.2d 179 (La.1977), where the Supreme Court interpreted it stating:
"By Act No. 179 of 1948, the legislature adopted a new definitional provision with respect to independent contractors which extended workmen's compensation benefits under limited circumstances to this class of person. Retaining the 1926 definition of an independent contractor in its entirety, the new provision expressly excluded from coverage under the workmen's compensation act an independent contractor `unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case said independent contractor is expressly covered by the provisions of this act.' * * * The obvious purpose of extending compensation coverage to an independent contractor under the circumstances described in the provision was to prevent an employer from avoiding liability under the act by contracting with an independent contractor for the execution of work undertaken by the employer which was part of the employer's trade, business or occupation. Hence, by this provision, La.R.S. 23:1021(6), the legislature extended workmen's compensation benefits to an independent contractor as defined in the 1914 and 1926 acts (i.e., any person engaged in the execution of *736 work undertaken by the principal which is a part of the trade, business or occupation of the principal for a specified recompense for a specified result and under the control of his principal as to the results of his work only) where a substantial part of his work time is spent in manual labor in carrying out the terms of the contract with his principal.
We therefore conclude that an independent contractor is covered under the workmen's compensation law only when a substantial part of his work time is spent in manual labor in carrying out the terms of his contract with the principal and the work performed by him as a part of the principal's trade, business or occupation." Lushute v. Diesi, 354 So.2d 179, at page 182 (La.1977).
This language plainly means that in some cases even an independent contractor will be entitled to workmen's compensation benefits.
In the present case, the record does not make clear the status of Mr. Gardner, i.e., whether he is an employee of GOPOCO; whether he is an independent contractor; and, if the latter, whether a substantial part of his work time is spent in manual labor. If Mr. Gardner's status is that of an employee of GOPOCO and he customarily performed for GOPOCO the duties being performed by plaintiff at the time of his injury, then the plaintiff's exclusive remedy against GOPOCO would be for workmen's compensation. The same result would seem to follow should Mr. Gardner be found to be an independent contractor with a substantial part of his work time spent in manual labor. On the other hand, if Mr. Gardner is ultimately determined to be an independent contractor not covered by the provisions of the workmen's compensation act, the fact that he customarily performed the same work for GOPOCO would not, in our view, have the effect of rendering plaintiff the statutory employee of GOPOCO.
For the above reasons, we find disputed issues of fact which preclude the rendition of summary judgment. Accordingly, the judgment of the district court is reversed and set aside, and the case is remanded to the district court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] When this provision was interpreted by the Supreme Court in Lushute v. Diesi, supra, they cited as it as La.R.S. 23:1021(6), which was its correct citation as the applicable law at the date of the decedent's death, even though it had been renumbered and it was then found as La.R.S. 23:1021(5) pursuant to Acts 1975, No. 583, § 1 effective September 1, 1975 (See Footnote 5 of Lushute v. Diesi, supra); this same provision is now again found at La.R.S. 23:1021(6) by virtue of it again being renumbered pursuant to Acts 1983, 1st Ex.Sess., No. 1. The wording of the provision has remained unchanged despite it being renumbered.