JESSIE SHELTON
v.
ZURICH AMERICAN INSURANCE COMPANY, BASF CORPORATION AND ROBERT STEFFL
No. 2008 CA 1306.
Court of Appeals of Louisiana, First Circuit.
February 13, 2009.
Not Designated for Publication
RUSSELL W. BEALL, Attorney for Plaintiff-Appellee Jessie Shelton.
GARY A. BEZET, ROBERT E. DILLE, ALLISON N. BENOIT, Attorneys for Defendant-Appellant Robert Steffl.
Before: PARRO, McCLENDON, and WELCH, JJ.
WELCH, J.
The defendant, Robert Steffl, appeals a partial summary judgment rendered in favor of the plaintiff, Jessie Shelton, that found Mr. Steffl 100% liable for an accident that occurred when Mr. Steffl's vehicle struck the plaintiff. For reasons that follow, we affirm the judgment of the trial court.

I. FACTUAL AND PROCEDURAL HISTORY
The plaintiff, Jessie Shelton, is a Louisiana State Police Trooper. On December 20, 2006, Trooper Shelton responded to the scene of a motor vehicle accident that had occurred in the left westbound lane of Interstate 10 near the Siegen Lane exit in Baton Rouge, Louisiana.[1] As Trooper Shelton was directing traffic, Mr. Steffl, who had been driving in the left lane, merged to the right lane, and as he did so, his vehicle inadvertently struck Trooper Shelton's right hip or buttocks.
On February 28, 2007, Trooper Shelton filed a petition for damages, naming as defendants Mr. Steffl; BASF Corporation ("BASF"), Mr. Steffl's employer and the owner of the vehicle that Mr. Steffl was driving; and Zurich American Insurance Company ("Zurich"), who had issued a policy of automobile liability insurance covering BASF and Mr. Steffl, which was in effect at the time of the accident. The defendants filed answers asserting, among other things, the affirmative defense of comparative negligence or fault of the plaintiff.
Thereafter, on September 13, 2007, Trooper Shelton filed a motion for summary judgment, seeking a judgment in his favor as to the issue of the defendants' liability. At the hearing on the motion for summary judgment, the trial court granted the motion, but only as to Mr. Steffl.
The trial court signed a judgment on November 20, 2007, granting summary judgment in favor of Trooper Shelton, "finding the defendant Robert Steffl 100% liable and resolving any and all issues of liability and comparative fault for the motor vehicle accident" with the "issues of medical causation and damages [being] reserved for further hearings and/or the trial of this matter." From this judgment, the defendant has appealed.[2]
On appeal, the defendant contends that the trial court erred in granting the motion for summary judgment on the issue of liability, because there were material factual disputes as to whether: (1) Mr. Steffl hit Trooper Shelton with his vehicle, and (2) Trooper Shelton was comparatively at fault.

II. LAW AND DISCUSSION

Summary Judgment Law
A motion for summary judgment is a procedural device used to avoid a fullscale trial when there is no genuine issue of material fact. Granda v. State Farm Mutual Insurance Company, 2004-2012, p. 4 (La. App. 1st Cir. 2/10/06), 935 So.2d 698, 701. Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
On a motion for summary judgment, the initial burden of proof is on the moving party. If the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing that there is no genuine issue of material fact remains on the party bringing the motion. La. C.C.P. art. 966(C)(2); Buck's Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054, p. 4 (La. App. 1st Cir. 2/16/01), 808 So.2d 428, 431. However, if the moving party will not bear the burden of proof at trial on the matter before the court, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the non-moving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial. Failure to do so shows that there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2). Accordingly, once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Babin v. Winn-Dixie Louisiana, Inc., XXXX-XXXX, p. 4 (La. 6/30/00), 764 So.2d 37, 40; see also La. C.C.P. art. 967(B).
Summary judgments are reviewed on appeal de novo. Granda, 2004-2012 at p. 4, 935 So.2d at 701, Thus, this court uses the same criteria as the trial court in determining whether summary judgment is appropriatewhether there is a genuine issue of material fact and whether mover is entitled to judgment as a matter of law. Jones v. Estate of Santiago, XXXX-XXXX, p. 5 (La. 4/14/04), 870 So.2d 1002, 1006. A "genuine issue" is a "triable issue," that is, an issue on which reasonable persons could disagree. If, on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Jones, XXXX-XXXX at p. 6, 870 So.2d at 1006. A fact is "material" when its existence or nonexistence may be essential to a plaintiffs cause of action under the applicable theory of recovery. Jones, XXXX-XXXX at p. 6, 870 So.2d at 1006.
Ordinarily, the determination of whether negligence exists in a particular case is a question of fact; therefore, cases involving a question of negligence ordinarily are not appropriate for summary judgment. Freeman v. Teague, 37,932, p. 4 (La. App. 2nd Cir. 12/10/03), 862 So.2d 371, 373; see also Powers v. Tony's Auto Repair, Inc., 98-1626, p. 2 (La. App. 4th Cir. 4/28/99), 733 So.2d 1215, 1216, writ denied, 99-1552 (La. 7/2/99), 747 So.2d 28. This principle extends to a question of comparative fault as well. However, where reasonable minds cannot differ, a question of comparative fault is a question of law that may be resolved by summary judgment. See Rance v. Harrison Co., Inc., 31, 503, pp. 7-8 (La. App. 2nd Cir. 1/20/99), 737 So.2d 806, 810, writ denied, 99-0778 (La. 4/30/99), 743 So.2d 206.

Discussion of the Record
According to the deposition testimony of Trooper Shelton, when he arrived at the scene of the accident on Interstate 10, he saw an automobile in the grassy part of the median and noticed that the traffic in the left lane was already beginning to merge to the right lane, since the left lane was partially blocked by a truck. He stated that he also noticed a spare tire behind the truck in the left lane, which had been knocked off of the truck during its impact with the automobile. Trooper Shelton stated that he then parked his vehicle, with the flashing lights on, between the truck and the spare tire, exited his car, and checked on the drivers of both the truck and the automobile. Soon thereafter, an ambulance arrived at the scene, and after the paramedics approached the drivers, he left the drivers and the vehicles in order to remove the spare tire from the roadway. Trooper Shelton stated that as he approached the tire, he noticed three vehicles in the left lane that were waiting to merge right. The first vehicle merged as he was removing the tire from the roadway, and as he looked back to the left lane, Mr. Steffl was the only driver remaining in the left lane, as all of the other motorists had merged. After Mr. Steffl and Trooper Shelton made eye contact, Trooper Shelton motioned for Mr. Steffl to merge. According to Trooper Shelton, Mr. Steffl then turned his head to look away, then looked back at him, and then turned his head again to look the other way. At that point in time, Trooper Shelton looked around the scene of the accident to see where the paramedics were, and then he heard the engine of Mr. Steffl's vehicle approaching, so he turned back and saw Mr. Steffl's vehicle immediately behind him. Trooper Shelton then stated that as he attempted to move out of the way, the front left portion of Mr. Steffl's car struck him on the right side of his buttocks. Trooper Shelton then shouted for Mr. Steffl to stop, but Mr. Steffl continued to merge. Therefore, Trooper Shelton ran to his vehicle, pursued Mr. Steffl on the interstate, and conducted a traffic stop of Mr. Steffl.
Trooper Shelton further testified that at the time of the accident, it was raining (and had been raining all day) and he was wearing a yellow rain slicker. Although it was almost dusk, there was adequate lighting and visibility, because there were lights in the median. Trooper Shelton explained that the duties required of him when directing traffic were to make sure that he was visible, to make eye contact, and to have his flashing lights on.
According to Mr. Steffl's deposition testimony, he was proceeding westbound on Interstate 10 on his way home from work. It had been raining and the traffic on the interstate was "backed up to stop-and-go driving" because of the number of accidents that had occurred. Mr. Steffl stated that he was driving in the left lane, but one by one, the cars in the left lane were merging into the right lane as they approached the vehicle with flashing lights. After the vehicles that were in the left lane ahead of Mr. Steffl had merged, and it was his turn to merge, he saw Trooper Shelton, who was wearing a yellow non-reflective rain jacket, step into the roadway and begin to wave his hands and direct him to merge into the outside or right lane. Mr. Steffl stated that since his car was stopped, he slowly positioned his car so that he could merge as soon as he saw an opening in the right lane. As he looked to the right (away from the direction where Trooper Shelton was standing), he saw that a tanker truck had left an opening for him, so he proceeded to move forward into that lane. As he did so, Mr. Steffl heard a "bang" on his hood, and although he did not see Trooper Shelton, he "assumed that that [the bang] was him." Mr. Steffl stated that he did not believe he struck Trooper Shelton, but thought Trooper Shelton hit the hood of his car. Furthermore, Mr. Steffl stated that although he heard the noise, he did not stop since the noise came from the top of his hood and traffic was already clogged, and he did not look in his rear view mirror to see if he could see Trooper Shelton.
Mr. Steffl testified that he believed that Trooper Shelton was at fault in the accident, because he entered a roadway without blocking the oncoming traffic and he should have protected himself from harm and the oncoming traffic by having either a flare or barrier.
Because Trooper Shelton would bear the burden of proof at trial that Mr. Steffl was at fault in causing the accident, the burden of proof on this issue remains with Trooper Shelton. With regard to Mr. Steffl's liability for the accident, all of the parties acknowledge that Mr. Steffl had a duty to exercise due care to avoid colliding with any pedestrian upon any roadway. See La. R.S. 32:214. In the defendant's first assignment of error, he contends that there were factual issues as to whether Mr. Steffl struck Trooper Shelton, thereby precluding summary judgment. Specifically, the defendant contends that while Trooper Shelton testified that he was struck by Mr. Steffl's vehicle, Mr. Steffl testified that he did not believe that he struck Trooper Shelton with his vehicle.
However, Mr. Steffl's statement that he did not believe that he struck Trooper Shelton was speculation. When the deposition testimony of Mr. Steffl is reviewed in its entirety, it appears that he was not privy to the facts that would enable him to testify that he did not strike Trooper Shelton. He stated several times that he did not see Trooper Shelton as he was merging or when he heard the "bang" and he did not look back in his rearview mirror after he merged and had heard the bang to see if he could see Trooper Shelton. Mr. Steffl's deposition testimony, consisting of his belief as to what may have occurred rather than his personal knowledge of what occurred, falls short of the factual support required to establish a genuine issue of material fact with respect to this question.
Furthermore, at the oral argument of this case, the defendants conceded that Mr. Steffl's vehicle contacted Trooper Shelton. Based on this concession and in light of Trooper Shelton's uncontradicted testimony, we find that Trooper Shelton met his burden of proof concerning the liability of Mr. Steffl for the accident in question.
Nonetheless, the defendant's main point of contention with regard to the partial summary judgment in this case, as raised in his second assignment of error, is that genuine issues of material fact exist with regard to whether Trooper Shelton was also at fault in causing the accident.[3] On this issue, the defendant has the burden of proof. Therefore, once Trooper Shelton pointed out a lack of factual support for the claim that he was also at fault in causing the accident, the burden shifted to Mr. Steffl to produce factual support sufficient to establish that he would be able to satisfy his evidentiary burden of proof at trial on this issue. In this regard, the defendant poses a number of questions he suggests remain unanswered that indicate Trooper Shelton may have breached the standard of reasonable care required of him, thereby precluding summary judgment. Specifically, in brief, the defendant questions whether Trooper Shelton was reasonable in turning his back on Mr. Steffl's car when the lane of traffic was merging, whether Trooper Shelton should have walked to the shoulder, and whether Trooper Shelton should have paid more attention to Mr. Steffl. However, after reviewing the entire record, we have found no evidence in the record before us either to support the defendant's assertions in this regard or to demonstrate any comparative fault on the part of Trooper Shelton.
Again, the defendant offered only speculation as to potentially negligent conduct by Trooper Shelton. Mr. Steffl opined that he believed Trooper Shelton was at fault because he entered a roadway without blocking the oncoming traffic and should have protected himself from harm by having a flare or barrier. But the defendant offered no factual support establishing an affirmative duty owed by Trooper Shelton in this regard. Rather, Trooper Shelton's uncontradicted deposition testimony establishes that the duties required of him when directing traffic at an accident scene were to make sure that he was visible, to make eye contact with the motorists, and to have his vehicle's flashing lights on. Trooper Shelton specifically testified that he was visible, because there was adequate lighting and he was wearing a yellow rain jacket, he made eye contact with Mr. Steffl when he was directing him to merge, and he turned on his vehicle's flashing lights as soon as he parked his vehicle. Accordingly, Mr. Steffl's speculation as to what Trooper Shelton should have done, without more, is insufficient to rebut Trooper Shelton's evidence establishing that he acted reasonably under the circumstances and to establish that the defendant will be able to satisfy his evidentiary burden of proving at trial that Trooper Shelton was comparatively at fault in causing the accident.
Therefore, based upon our de novo review of the record, we conclude that Trooper Shelton made a prima facie showing that his motion for summary judgment should be granted. At that point, the burden shifted to the defendant to present evidence demonstrating there remained a genuine issue of material fact as to Trooper Shelton's comparative fault. Based on the evidence in the record before us, we find reasonable persons could reach only one conclusionTrooper Shelton was free from fault, or not comparatively at fault, in the accident. Therefore, we find that the trial court properly granted Trooper Shelton's motion for summary judgment, and we hereby affirm the judgment of the trial court.

III. CONCLUSION
For all of the above and foregoing reasons, the November 20, 2007 judgment of the trial court is hereby affirmed. All costs of this appeal are hereby assessed to the defendant/appellant, Robert Steffl.
AFFIRMED.
NOTES
[1] It is undisputed that at all times, Trooper Shelton was acting in the course and scope of his employment.
[2] The initial lack of a final judgment designation pursuant to La. C.C.P. art. 1915(B) was cured by supplementation of the appellate record with an amended judgment signed by the trial court on January 12, 2009. Furthermore, after de novo review of the record and considering the factors set forth in R.J. Messinger, Inc. v. Rosenblum, XXXX-XXXX (La. 3/2/05), 894 So.2d 1113, we find that this partial summary judgment was properly designated as a final judgment.
[3] A partial summary judgment may be granted on the issue of liability alone, although a genuine issue of material fact as to the amount of damages remains to be decided at a trial on the merits. However, a partial summary judgment may not be granted for purposes of determining a particular element of liability where such a determination is not completely dispositive of the question of liability between the parties concerning that claim and other issues such as comparative fault. Tye v. Co-Mar Offshore Operators, Inc., 95-0094, p. 5 (La. App. 1st Cir. 10/6/95), 669 So.2d 438, 440, writ denied, 96-1051 (La. 6/7/96), 674 So.2d 975. See La. C.C.P. arts. 966(E) and 1915.